18-2908, 18-2225, Marathon Petroleum CompanyLP v. National Labor Relations Board, 11-9608, 18-2255, asking for Petitioner cross-responsibility. Thank you. Good morning. Maurice Baskin for the Petitioner Marathon Petroleum. I've asked to reserve three minutes' time for rebuttal. We're here challenging the National Labor Relations Board's ruling that Marathon somehow violated the Act, the Labor Act, by failing to give the union confidential information about its subcontractors. The starting point for this review must be the longstanding bargaining agreement between the parties, which gave the company the unilateral right to subcontract, meaning it was not a mandatory subject of bargaining, and therefore there was no duty to provide information about that subject during the life of the agreement. Could you refresh me which provision of the CBA says that? Article 20. Article 20. Yes. And it starts with an important preamble. It contains a bunch of restrictions on subcontracting, and then it says none of these apply during the life of this agreement unless there's a layoff. There is no allegation that there was a layoff. There was no claim by the union there was a layoff. None of the information you requested sought information about a layoff. So, again, that's our starting point. And there have been a series of cases decided by the board, beginning with Detroit Edison, 1994, the board decision, not the Supreme Court decision. The Disneyland case, Ethicon, they all dealt with subcontracting clauses very similar to this case, not mentioned much by the board or the administrative law judge. Unilaterally reserving the right to the company to subcontract in those cases. Not mandatory subject to bargaining. And so requests for cost information by the unions in all of those cases were rejected. Somehow they were allowed to do it here. So the thing I'm struggling with and that the NLRB brings up is your failure to put this front and center. What you do in your brief here, it's pretty clear. You say we didn't have a duty to bargain. It seems to me, at least in front of the ALJ, I know you don't per se have to raise it there, but in front of the ALJ, you don't put that front and center. And even in front of the board, it doesn't seem to be the main focus of your argument. And why isn't it forfeited at this point? Well, first, there's been no holding by the board that it was forfeited. And for 10E purposes, the company clearly did object to the board about the administrative law judge's handling of it. The footnote one that the general counsel relies on is not a holding of the board. One member of the board said there was waiver. The other two members gave a speculative even if for sake of argument approach, which this court has said is not a holding. But if there had been such a holding, it would have been wrong. Because the trial counsel did raise the issue, just raise it in a different way, I would submit. He was emphasizing, beginning with the answer, that it was not a mandatory assailant to bargaining. And therefore, a request for cost information reaches an impenetrable wall. And brought it out through testimony of Mr. Jackson, we've cited the answers at the appendix page 39, the opening statement, appendix page 175, nothing in the bargaining agreement imposes any limitations on subcontracting routine maintenance. That means it's not a mandatory subject of bargaining. That means there is no duty to bargain. When we interpret both the CBA and the letter agreement, it's a legal interpretation, right? They're contracts. Yes, to which you don't defer to the board. Okay. And so why isn't there, looking at the letter agreement itself, it seems to me the letter agreement had teeth towards the end that implied at least there was some obligation. If all you were doing is meeting and discussing, why would the letter agreement have all these consequences and set out all these, in the event they fail to discuss data, here's what you have to do. In the event, why would all that matter if all you're doing is meeting and discussing? Because, well, for two reasons. First, combined at the end is the statement, nothing in the above should be construed as constituting minimum staffing levels and it is understood that any hiring of maintenance employees will be based on business and facility maintenance needs as determined by the company. I understand that. And then is the next sentence that you've mentioned. Right. So they're close to the end. And the answer is, and this is brought out very well, I think, in the amicus brief, this is not just the company's concern. This is an industry-wide and, in fact, business-wide concern. Meet and discuss agreements are a common practice. When the parties have concluded negotiations and they are at loggerheads, but they said, all right, we don't want to have another dispute. We want to end the strike that was going on. So we're going to leave the bargaining agreement in place. But we'll vent. We'll talk to each other in the meantime. And they've added that if there's a dispute about how well we're talking to each other, we're going to go through a dispute resolution procedure, which the union did not even exercise here. So this is a real concern. The ALJ seemed to say meet to discuss means bargain. And you say that's completely wrong. Yes. Where else could we go to decide whether the ALJ is correct or you are correct? Are there actual opinions of anybody, any other ALJs or the board or courts, that say what meet to discuss, I think, is the language? Yes. Omaha World Telegram. Omaha? That's the case that we've cited in the briefs. There's a follow-up case called Tesorio, which just reaffirms the basic principle that meet and discuss means something different from bargain. Also the dictionary says that. We cited that, too. What about Ford Motor Company? I mean, that's a Sixth Circuit case. Why wouldn't that be your best case? We accept it. But, you know, we were looking at the board case law, and we believe that applies. If we're doing a legal interpretation of what meet and discuss means, it seems to me, tell me if I'm wrong, the Sixth Circuit saying it doesn't mean duty to bargain would be pretty compelling for the Sixth Circuit. Right. We agree. So we accept that as well. But the point being that the starting point is the actual wording. The judge, the administrative law judge, throughout the analysis, every time somebody used the word discuss, the judge arbitrarily changed it to bargain. Beginning with the letter agreement, but also in Exhibit 3, the General Counsel Exhibit 3, the union's letter seeking to open discussions does not use the word bargain, but the judge says that the union sent a letter asking to bargain. The company responded, once again not using the word bargain. The judge says the company responded to bargain. This is a distortion and misstatement by the judge of the record. It violates the substantial evidence rule. It's got to be on the record as a whole, and this is not record evidence that the judge is relying on. And you presented this as an argument to the board? The argument to the board was in the broadest terms. Yes or no? Well, this being I've said a lot of words here. You're saying here that meet to discuss was wrongfully restated by the ALJ to mean bargain. And my question is, was that particular argument that the ALJ made a fundamental error in calling meet to discuss bargain presented to the board? Yes. So can you? Refer you to Exception 4 and Exception 10, which can be seen at Appendix 32 and 33. The company accepted to the judge's conclusion that the parties, per the letter agreement, specifically agreed to bargain over the maintenance work. Okay. And that is a list. And then did you have briefing in front of the board? Yes. The brief at Appendix 26 reiterates and expands on that argument as well. There's no question we made once the shock wore off that the judge had totally blindsided the parties by saying that suddenly this meet and discuss agreement was actually a bargaining agreement. The company recovered and said to the board, this is wrong. That's all you can do when a judge does something like that, that no one had contended during the hearing itself. But it's on the same wavelength as Judge Moore. It wasn't one of your initial arguments or the one that you pushed. I mean, it was in there, but it was oblique. I mean, it was stated, but it wasn't the real point of your brief, was it? It was one of the points. And fortunately, Section 10E does not require, there are a number of cases that says it just has to put the board on notice. There's no requirement that it be the number one argument. And, you know, we could all say it would have been better to make it the number one. But it was, and I would submit it really is, and I want to get to the relationship, the relevance of the contracting information that they were seeking. All of these cases, and a lot of the board cases, they don't talk about duty to bargain. They just say because it's a non-mandatory subject to bargaining, this request is not relevant to it. Because you're up against a wall. You could say the costs are X, the costs are Y, high or low, it doesn't matter. That's what we're struggling with is all of this could have been averted if the primary argument was we didn't have any obligation, so. And that's what you don't see front and center in front of the ALJ. I agree, the ALJ kind of blindsided you. But it seems to me you've got all these other arguments that are, in my opinion, more troubling for you. But this first one seems like if you presented it properly, we wouldn't be here. Well, hindsight's 20-20, I didn't do the presenting. But it really is, we agree it's the best argument, that's why we put it first. Although we think it's closely related to this relevance argument. When you look at the relevance cases that I mentioned, Detroit Edison and Disneyland and Ethicon, what they're really saying is that the cost information being requested does not change the fact that it's not, that the company has the unilateral right to do it regardless of the cost. And, in fact, Detroit Edison had. But if you had a duty to bargain, then I think, isn't it more difficult for you? Because then this cost information becomes a whole lot more relevant. Yes. And so the ALJ operated, I'm sorry to interrupt you, but the ALJ operated under the assumption, I think we all agree, that you had a duty to bargain. And I want to amend my answer when I said yes. Not a lot more relevant, somewhat more relevant. And it's still not. If you had a duty to bargain on subcontracting, wouldn't it be very relevant to know how much the subcontractors were being paid to the union so the union could point out that its employees could do the work cheaper? Not when you look at the letter that they were supposed to be operating under, which did not talk about cost, it talked about efficiency. Efficiency is also a word that is defined, and it means to produce something without a lot of waste. That's not about cost. The company explained what it meant by efficiency, which is they hired subcontractors to be able to expand and contract their workforce. That has nothing to do with cost. It's inefficient to have a lot of people standing around, whatever they cost, standing around because they don't have enough to do. And the union never addressed the efficiency issue. And I wanted to reserve my three minutes, but I defer to your judgment if I don't want to stop in the middle of answering a question. Thank you. Thank you. Thank you, Your Honors. May it please the Court. My name is Steve Biestjad. I'm counsel for the National Labor Relations Board. The board is seeking enforcement of an order against Marathon Petroleum Company for violations of Section 8A1 and 8A5 of the National Labor Relations Act by refusing to provide information relevant to the union's statutory bargaining duties. The board found in this case, and substantial evidence supports the board's findings, that the union requested subcontracting costs from the employer. Those were relevant to the union's bargaining duties, and that the company failed to establish its confidentiality defense. Why do we agree with all that? Doesn't it come down still to this legal question of whether this letter agreement imposed a duty to bargain on the company? In the absence of a duty to bargain, Your Honor, if there was never any duty to provide info in the first place, then, yeah, it would come down to that question. But in this case, since that was never argued, that argument was waived. Well, but, I mean, it was raised as an exception to the ALJ, and I think their statement of law is correct, right? That they, under Section 10E, that's sufficient. So, here, the company never raised the argument to the administrative law judge, and there is case law saying that the board is not required to address arguments that were never raised at the hearing. But they didn't, but the board didn't. So, walk me back for a second. I understand what you want to argue. Is it a legal interpretation, first, as to whether disgust means bargain? In other words, is that a legal question that we review as a legal question de novo, or is it something we look at for substantial evidence? I think that question is not before the court. I think that question was waived. I understand your argument as to all that. I get it. I promise. If it's not waived, is it a legal question? If it's not waived, I think that it's a mixed combination of law and fact, and that an unfair labor practice would be within the board's jurisdiction to decide in the first instance, which it never had the opportunity to address those arguments. I'm sorry to interrupt you, but I thought the Sixth Circuit Supreme Court, and every court I've ever seen, has said matters of contract interpretation, no matter who they're in front of, when they get to us, are questions of law and legal interpretation. Am I wrong? I'm not saying you're wrong about that, Your Honor. I'm saying that this is an unfair labor practice and that contractual interpretation is part of the determination of whether there was an unfair labor practice. And so, if this court were not to find that the argument were waived, we would request a remand so that the board could examine it in the first instance. Well, your opponent has said that there is no law that would say, meet to discuss means bargain. Can you point us to something that would say that the ALJ was correct in rephrasing this contract when it says meet to discuss as the word bargain? Well, in the absence of any arguments to the ALJ that there was no duty to bargain, all the surrounding circumstances of this case showed to the judge that there was indeed, in fact, actual bargaining over this issue. The contract itself says the parties will meet to discuss subcontracting costs. They actually did meet to discuss those costs. They exchanged some information in regards to bargaining. They could have been doing something that they weren't required to do. And what I'm trying to find out, and it's sort of building on Judge Sipar, if it is a legal question, we would think that there would be some law from ALJs, from the board, from courts that say, oh, meet to discuss means bargain. Well, Your Honor, I can say that in the statute itself it defines the duty to bargain as the parties will, quote, meet and confer at reasonable times. And so when the agreement itself says meet and discuss and the parties did, in fact, bargain, the ALJ – Hold on, I'm sorry to interrupt you, but in the amicus brief points this out. There are plenty of letter agreements and other agreements that talk about meeting and discussing or meeting to discuss. Is there any case anywhere that says that equals bargaining? Because the amicus clearly indicates no, and your opponent clearly indicates no. And so I think Judge Moore's question is an important one, is where is that case? The board never examined whether or not meet and discuss equals bargain because the argument was never raised before the administrative law judge that it doesn't. And so I cannot comment on what the board didn't – the issue was never before the board. Are you representing the board? Yes, Your Honor. So the board has chosen, then, to avoid answering this question in the briefs, for instance. The briefs do not say, oh, here's a case that says meet to discuss means bargain. The board said, oh, if you're going to go down that route, court, please send it back. That's correct, Your Honor, yes. The board found that because this issue that they are now raising on appeal was never raised before the administrative law judge, it was therefore waived because the board is not required to examine arguments that were never raised to the judge. But the problem for the board on that is it's the ALJ who said meet to discuss means bargain. And so the board wouldn't have known before the ALJ rendered its opinion that the ALJ was going to make that conclusion. So then wouldn't the appropriate time be for the company to raise this in front of the board? And the company says, oh, we did, and you say, oh, no, you didn't, because you're saying that the exceptions that your opponent pointed to on two pages where there are ten exceptions listed isn't enough. No, that's not what we're saying, Your Honor. What we're saying is the company had every opportunity to argue before the judge at the hearing that they had no duty to bargain and that this Article 20 of the Collective Bargaining Agreement gives them unilateral control over subcontracting. That was never raised at any point before the judge. At the ALJ level. They never argued it to the ALJ, and so the board in its decision decided not to address that issue because it was never raised to the ALJ, and the board was well within its discretion to do so. In addition to that... According to Tenney, they just have to apprise the board. This isn't Tenney. This is at the ALJ level. This is at the ALJ level. Separate from Tenney, there's the waiver because they refused to raise it. They did not raise it to the judge. So the board found waiver of that argument because it was never raised. In addition to that, the company failed to object to the board's finding of waiver, and that's why this court is jurisdictionally barred from examining an under section Tenney. If we find they didn't forfeit or waive, then have you waived the right to respond to them by saying please remand and never address their legal argument? Because that's what they say, right? Everyone seems to be screaming waiver. Well, the argument was never raised to the judge. The board found that. The company never objected to the board's finding. I'm sorry. Assume my premise for a second. My premise is we find they raised it sufficiently. Have you then waived the right to respond to their legal argument by not responding? No. We would request a remand to examine the unfair labor practice issue in the first instance and address their arguments if the court found that it wasn't waived and the court finds that they're not jurisdictionally barred, which under section Tenney this court is jurisdictionally barred from reviewing their arguments because the company never objected to the board's finding that the arguments were waived. And that's Supreme Court case law, Your Honor. That's Welke found that in order to preserve an argument before a court, they have to object to the board's finding in a motion for reconsideration. Here the company never did that. Okay. So looking at what the board did in its decision of July 18, 2018, I would make a statement for you to feel free to disagree with, that the board is totally opaque as to what it did because it did it all in one footnote. Am I right? The board has this footnote number one, which says Chairman Ring focuses on waiver. And then there's a second paragraph, contrary to the chairman, we don't agree that this would amount to waiver. But we also find no merit to his suggestion that the agreement may not give rise to a bargaining obligation. So what is your take as to what the board did? Yes, Your Honor. Here in footnote one, as you pointed out, Chairman Ring states at the bottom of the page there in footnote one that, quote, no such argument was raised to the administrative law judge, that argument being the no-duty-to-bargain argument. And then the majority goes on to state, contrary to the chairman, we do not agree with the facts he describes or anything in the side agreement itself would amount to a waiver even had such an argument been properly raised to the judge. So what you have here is a unanimous three-member board finding that the argument was never raised and then not addressing it, but addressing the argument of no-duty-to-bargain on the merits under the hypothetical that, well, this is what we would decide if it had been raised, but because it wasn't raised, we're not going to decide the issue. And that's what the board did here in finding waiver. And the company, if they were upset that they were – yes, Your Honor, sorry. There's in this footnote, we also find no merit to his ring's suggestion that the side agreement requirement to meet and discuss the preservation of bargaining unit work may not give rise to a bargaining obligation. We find no merit to his idea that it may not give rise. So you're saying that means that the majority of the board said there is a bargaining obligation. There is a bargaining obligation here, Your Honor, yes. That stems from the agreement. And that's what that sentence says. And that's the entirety of the board's analysis of the merits here, of the question. No, the company's argument is that it had no duty to bargain. In this footnote, the board found those arguments waived. And that's why it doesn't go into addressing the particulars of the kinds of issues that the company and the amici now raise protractedly on appeal. I truly don't see this, and I'm sorry if I'm being dense. I apologize. The majority says, contrary to the chairman, we do not agree with the facts he describes or anything in the side agreement itself would amount to a waiver. Even had such an argument been properly raised to the judge. Okay, but whose waiver are they talking about? They're talking about – in that waiver here, they're talking about whether they – the company's argument essentially is that because the collective bargaining agreement contained a clause giving the company unilateral control over subcontracting, that the union waived their right to bargain over the issue of subcontracting. And therefore, because they had no right to bargain, the company had no right to provide that information. And so when the board here is talking about waiver, they're talking about waiver of the union's right to – Waiver by the union. To bargain over subcontracting. So hypothetically, if this panel were here, sitting here, were to think that there is lots of opacity here and that there's all these contradictory arguments about waiver, why wouldn't the proper remedy be for us to remand to the board to decide the key issue, was there a duty to bargain over subcontracting here? Well, the board would request a remand in the event that this court does not find that they are barred under – you're barred under Section 10e from examining the issue. And the board would argue that this court is barred under Section 10e from examining that issue because the company failed to raise in a motion for reconsideration an objection to the board's waiver finding or a clarification of this footnote. The company never did that, and so they're raising this issue now for the first time on appeal, objecting to the board's waiver finding. Where does it say anywhere that a company or a union would have to file objections to the board's decision rather than going to court? Welke, Your Honor, we cite two in our brief. Issues that the board decides sua sponte that the company or that a party fails to object to in a motion for reconsideration are waived and the court is jurisdictionally barred from considering those issues. And that's what the board would argue here, Your Honor, and in the event that this court determines that it's not jurisdictionally barred from examining this issue, we would request a remand to decide in the first instance the duty to bargain arguments that the company and the amici now raise on appeal. But if you look at the record as a whole, including the entire transcript, it's clear that the company never raised the issue of no duty to bargain. They focused their arguments specifically on confidentiality and the issue of relevance. They cite three passing references that are insufficient to put the judge on notice that they were raising a no duty to bargain issue. And in any event, the board was well within its discretion in finding that those arguments waived for failure to raise to the administrative law judge. And again, this court is barred from examining those arguments because the company never objected to the board's finding of waiver in a motion for reconsideration. And on the merits of the case, the board had substantial evidence in support of the board's finding that the requested subcontracting costs were relevant to the union's statutory bargaining duties and that the company failed to establish its confidentiality defense. And if there was no duty to bargain, then the company wins, correct? If we skip over waiver, if there is no duty to bargain, the company wins. Absolutely, Your Honor. If there was no duty to bargain, then there was no duty to provide the information in the first instance. Thank you. Thank you, Your Honor. Counsel, can you address Welke? Because it does say where, basically, in Welke, where the employer's challenge to a sua sponte decision of the board that you are obligated to file a motion for reconsideration in that circumstance. Yes, completely different situation in Welke. And U.S. Postal Service, your own decision explains why. Welke is a board creating a new remedy. Here, where, and this is what USPS says, where the board is merely responding with a reason why an objection, the employer's objection is being rejected, that is not a new issue. It is a response to the original objection. And that's what happened here and why 10E has no application. Otherwise, it would be a never-ending ping-pong match. Every time the employer says something, the board says no. You have to file a reconsideration from saying no, depending on what reason. Or the union. Or the union. Right. So 10E has no application. You asked if there was any law supporting the board on the notion of meet-and-discuss versus bargain. The counsel has conceded that there is none. At least he didn't answer that there was. No, he said he hasn't briefed the issue. Well, all right, so let's get to the question of remand, I guess. And the general counsel has conceded in his brief, and just to you, that if he's unsuccessful on the waiver argument, then he loses. Or, at best, gets a remand. They've asked for the remand if it comes to that. Our main concern is that the board's order not be enforced. I would point out this case has now been pending for about, I guess, we're up to four years. And both the company and the industry sort of feel entitled to the issue resolved about meet-and-discuss. We want to use these in the future, and it's, frankly, harmful to unions not to be able to use them. So we are concerned about a remand, but our primary concern is that the decision not be enforced. The case law is pretty clear. If you get a remand and you're right about the case law, why are you worried about it? Well, it's going to take more time. For another round of briefing, decision-making at the board, normally in a situation Is there some harm that's happening to you because of the time going on? There is uncertainty about what to make of, well, first of all, there's a pending board order that we turn over this information. Subcontractors are uncertain whether they can count on their confidentiality, whether the company is going to be required to suffer the penalties of compliance. And they want to move on. And so they're entitled, I think, to a resolution, a resolution, of course, in which the board's order is denied enforcement. And so that's what we ask for. But if we thought there was a lot of ambiguity as to who waived what, why wouldn't remand be the ideal resolution to let the board address on the merits this question that you think you win slam dunk, that need to discuss does not mean bargain? I mean, then you would have a clear-cut board answer. Well, we think a clear-cut answer from the court would solve the problem. And as I say, we leave it to the court's discretion, which is better. But in our experience, the board has come to you to enforce its order. Its order is unenforceable. End of story. And there's no reason to prolong the saga. It would be our main view. But certainly a remand is preferable to enforcing an unenforceable order. And we're glad we're talking about the choice between perhaps simply denial versus remand. But they have conceded. Here's the other problem. The board had its opportunity. And they recognized that the issue was in front of them. Member Ring outlined, in fact, things that the company had said, but said, well, you didn't tie it up in a pretty bow and present it to us on a silver platter. And so he said, you haven't done enough. The other two board members did not say that. If they had wanted to say that, it's very simple. They would have said, we agree with Member Ring on the point about the waiver, but even if, we would have said this other stuff. They forgot. They didn't do that. They did not sign on. And that's what they typically do when they agree with part and not all. And so they clearly, there is no board finding of waiver. Do they typically do it in a footnote? Regrettably, the board does often make these rulings upholding a judge and then footnotes that are sometimes incomprehensible. The courts have rejected those kind of rulings. The courts have called them to task for that. And usually remand. Is that correct? No, I don't think usually remanded. They've usually denied enforcement. But I haven't done a statistical survey on it. And so each case is somewhat different. But we think in this case, what's critical is, and I think it's been demonstrated today, enforcement should be denied. Thanks. Thank you both for your argument. The case will be submitted with the clerk. Call the next case, please.